IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| B.G. | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION FILE NO.: |
| | : | |
| v. | : | _____ |
| | : | |
| S A S HOTELS, LLC | : | |
| d/b/a Econolodge | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Matthew B. Stoddard
Joseph J. Gleason
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
joe@legalhelpga.com

**Attorneys for Plaintiff**

1

## INTRODUCTION

1.      From approximately February 19, 2013 until April 30, 2018, an Econolodge Hotel located at 4874 Old National Hwy, College Park, Georgia (the "Econolodge") was owned and operated by Defendant.

2.      From 2014 through the end of 2016, B.G. – a sixteen- to eighteen-year-old girl – was repeatedly trafficked for sex at the Econolodge by Ghimel Hodges a/k/a ("Dre") with the assistance of Dre's mother Diedre White, and Dre's fellow gang members "Slim" and "BJ".

## PROCEDURAL ISSUES

3.      Given the nature of the case, B.G. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed full names to defense counsel or will immediately upon identification of defense counsel.  When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking Court permission for Plaintiff to proceed anonymously.  Upon information and belief, Defendant(s) will consent to Plaintiff proceeding without publicly disclosing her name.

4.      Defendant can be served through its any agent or officer at the time of dissolution including Mohammed Awal at 39 Stonebridge Pass, Newnan, GA 30265.

5.      Defendant was properly served with process in this matter.

2

6.      Defendant is subject to the jurisdiction and venue of this Court.

7.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act which is a law of the United States.

8.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Fulton County Georgia which is within the Northern District of Georgia's Atlanta Division. *See* 28 U.S.C. § 1391.

## B.G. IS TRAFFICKED FOR SEX AT THE HOTEL

9.      In 2013, B.G. was on her way home from school waiting for a train when she was approached by Dre.  B.G. was sixteen years old.  Dre, who was born in 1996, was approximately eighteen years old.

10.     Dre told B.G. she would be his girlfriend.

11.     While with Dre, Dre began to deprive B.G. of sleep.

12.     After a few weeks with Dre, Dre began to beat B.G. and told her he would be selling her body for sex, and that Dre would keep the money.

13.     Dre eventually took B.G. to the Econolodge and told her that she would be working as a prostitute, that he was her pimp, and that he would receive the money for the sex work.

14.    Dre beat B.G. and imprisoned her.

15.    Dre forced B.G. to use drugs and to drink alcohol.

16.    Dre caused B.G. to fear for her life.

17.    Dre continually sold B.G. as a sex slave to buyers at the Econolodge.

18.    Dre raped B.G. at the hotel.

19.    B.G. was sexually assaulted dozens of times while at the Econolodge by various "Johns."

20.    Dre took the commercial sex act proceeds.

21.    For the duration of the stays, Dre used a portion of the proceeds from the commercial sex acts to book lodging at the hotel for the next night.

22.    Upon information and belief, Dre would use Defendant's WIFI network to post advertisements for B.G. to perform sex acts, and men would thereafter rape B.G. because of these advertisements.  Upon information and belief, Dre paid for the use of Defendant(s) WIFI network either through the room rental fees or a separate charge.

23.    Dre would not let the cleaning staff clean the rooms where B.G. was performing commercial sex acts.  Instead, either Dre, Slim, BJ, or B.G. (at Dre' direction) would ask Defendant's cleaning staff for towels and sheets.  These

requests for towels and sheets were made multiple times each day, and Defendant's staff always complied.

24.    B.G. was forced (through coercion, violence, and threats of violence) to have sex with men in exchange for money in rooms at the hotel that her trafficker rented from Defendant.  B.G. was beaten.

25.    Dre took the money from the sex acts and used it to re-rent hotel rooms from Defendant, and then he again forced (through coercion, violence, and threats of violence) Plaintiff to have sex with men in exchange for money in the hotel rooms.

26.    Defendant's staff and agents observed the following signs and symptoms of trafficking from B.G.:

      a.    malnourishment, poor hygiene, fatigue, sleep deprivation, bruising, cuts, and other physical injuries;

      b.    lack of freedom of movement and constant monitoring by older men;

      c.    no control over or possession of money;

      d.    "uniforms" for a trafficking victim such as very high heels and cheaply made dresses that cover very little of a person's body;

      e.    constant and excessive requests for towels and sheets to housekeeping;

      f.    prohibition of some staff members to enter the hotel rooms;

g. constant dirty sheets and towels with excessive bodily fluid and blood on them found in the rooms and many more towels and sheets that one person would use;

h. large numbers of used condoms and some sex toys in the rooms;

i. rooms rented daily by the same trafficker who would frequently pay with cash;

j. a trafficker renting multiple rooms over and over again;

k. extended stays by the victims without those victims having personal possession's other than their "uniforms";

l. a constant stream of male visitors entering the room one at a time, staying a short period, and then leaving such that no no one would believe that the hotel room was being used solely for lodging purposes; and

m. victims and traffickers being steered to certain areas of the property and only given rooms in its "prostitution wing."

## COUNT 1:  TVPRA CLAIMS

27. Defendant "knowingly benefited" from Plaintiff's trafficking because:

a. the trafficker rented rooms at the hotel;

b. the trafficker used the hotel WIFI network;

c. Defendant collected revenue from the room rentals and the use of the WIFI network; and

d. the victim was advertised for sex through the WIFI network and forced to have sex in the rooms.

28. Defendant took part in a common undertaking involving risk or profit with the trafficker because:

    a. Plaintiff's trafficker would pay in cash for one night at a time, booking the next night's stay before check-out time;

    b. Defendant directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

    c. Defendant was directly renting rooms to the same trafficker – Plaintiff's trafficker;

    d. Defendant had commercial dealings with Plaintiff's trafficker and then continued to rent rooms to Plaintiff's trafficker.

    e. Defendant had a continuous business relationship with Plaintiff's trafficker such that Defendant established a pattern of conduct with her trafficker.

    f. After renting the room for the first night, Plaintiff's trafficker had prior commercial dealings with Defendant and then reinstated those dealings.

    g. Defendant associated with Plaintiff's trafficker in an effort to force Plaintiff to serve Defendant's business objectives.

    h. Defendant owned, operated, and maintained the hotel in question.

    i. Defendant's staff steered Plaintiff and Plaintiff's trafficker to certain rooms at the hotel which were near the rear and less likely to be seen by police.

    j. Defendant's staff were friends with Plaintiff's traffickers and would joke and spend time with Plaintiff's traffickers.

29.    Plaintiff's trafficker's undertaking with Defendant(s) violated the TVPRA with respect to Plaintiff because:

a.    the trafficker recruited the Plaintiff to participate in commercial sex acts at Defendant's hotel by, among other reasons, stating that he would take care of the Plaintiff and then making Plaintiff work as a prostitute;

b.    the trafficker harbored the Plaintiff at Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the property;

c.    the trafficker transported the Plaintiff to Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

d.    the trafficker maintained Plaintiff at Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

e.    The commercial sex acts occurred at Defendant's hotel in rooms rented by the trafficker;

f.    the trafficker used force, threats of force, fraud, and coercion to cause Plaintiff to participate in commercial sex acts at Defendant's hotel;

g.    the trafficker threatened the Plaintiff with violence and used this tactic to cause Plaintiff to engage in commercial sex acts at Defendant's hotel;

h.    the trafficker de-frauded Plaintiff by falsely telling Plaintiff that he would take care of Plaintiff, and then forcing Plaintiff to work as a prostitute for him at Defendant's hotel;

i.    the trafficker coerced the Plaintiff to participate in commercial sex acts at Defendant's property by threatening Plaintiff with

physical harm and sharing of lewd photographs with family if the Plaintiff did not engage in commercial sex acts at Defendant's hotel;

j.    the trafficker knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited the Plaintiff to engage in commercial sex acts in the hotel rooms that the trafficker rented from Defendant;

k.    Buyers came to Defendant's hotel, purchased the "right" to have sex with Plaintiff from the trafficker, and then the buyers raped the Plaintiff at Defendant(s)' hotel;

l.    Dre was aware or should have been aware that B.G. was not yet eighteen years of age but nevertheless sold her for commercial sex at Defendant's hotel;

m.    the trafficker utilized Defendant's wireless internet connection to post advertisements of Plaintiff for the commercial sex acts; and

n.    Other actions to be proven at trial.

30.    The venture in which Defendant participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through websites for selling Plaintiff in commercial sex acts, the use of the internet to post sex advertisements, the use of interstate highways to transport Plaintiff to the hotels by her trafficker (and his associates), and other reasons to be proven at trial.

9

31.    As shown above, Defendant had – at minimum – constructive knowledge that Plaintiff was being trafficked for sex at the property. *See also* Fed. R. Civ. P. 9(b)("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

32.    Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiff, and other crimes at the hotel during the relevant period.

## CAUSATION AND DAMAGES

33.    As a direct and proximate result of Defendant's acts and omissions Plaintiffs suffered substantial physical, emotional, and psychological harm and other damages.

34.    Defendant is joint and severally liable with Plaintiff's trafficker, and his associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to Plaintiff.

35.    Defendant is liable for Plaintiff's damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

36.    Plaintiff brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a.    Personal injuries;

b.    Past, present and future pain and suffering;

c.    Disability;

d.    Disfigurement;

e.    Mental anguish;

f.    Loss of the capacity for the enjoyment of life;

g.    Loss of earning capacity;

h.    Lost wages;

i.    Diminished capacity to labor;

j.    Incidental expenses;

k.    Past, present and future medical expenses;

l.    Permanent injuries;

m.    Attorney's fees;

n.    Punitive damages; and

o.    Consequential damages to be proven at trial.

37.    Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

38.    Each of the forgoing acts and omissions constitute an independent act of negligence on the part of the Defendant, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

## STATUTE OF LIMITATIONS

39.    Because Plaintiff B.G. was a minor during her trafficking, the statute of limitations under the TVPRA is tolled until her eighteenth birthday such that her claims are still viable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for a judgment against the Defendant and for the following:

1)    That process and summons issue requiring each Defendant to appear as provided by law to answer the allegations of the Complaint;

2)    Plaintiff be awarded actual damages in amounts to be shown at trial;

3)      Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

4)      Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6)      Punitive damages be imposed upon Defendant;

7)      Plaintiff be provided with a trial by jury; and

8)      Plaintiff has such other relief as this Court deems just and appropriate under the circumstances.


This 11th day of June 2025.


_____

Matthew B. Stoddard
Ga. Bar No.: 558215
Joseph Gleason
Ga. Bar No.: 297202
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
matt@legalhelpga.com
joe@legalhelpga.com
**Attorneys for Plaintiffs**

13